ALFREDO E. CANINO, Plaintiff and Appellee, *v.* SANTIAGO BELLAFLORES, INC. ET AL., Defendants and Appellants.

No. 11187.   Argued November 3, 1954.—Decided October 31, 1955.

*Rafael Pastor* for appellants.  *Luis Ríos Algarín* for appellee.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The parties in a suit for the collection of money filed a stipulation in the trial court which reads verbatim as follows:

"The parties appear through their respective attorneys and stipulate:

"1—That by judgment rendered today in this case, after a trial on the merits, the defendant corporation was ordered to pay $4,800 to cover the rent from March 1, 1953, to July 24, 1953, both dates included.

"2—The parties agree that the judgment be final and enforceable from the moment it is rendered, both parties waiving the right to appeal and considering themselves as notified of the judgment.

"3—The parties agree that the judgment should contain also a pronouncement covering the sum of $500 for the payment of fees of the plaintiff's attorney in addition to the principal debt above-mentioned; that is, the total sum of $5,300.

"4—The plaintiff waives the collection of costs and interest on the amount of the judgment.

"5—It is understood, as decided by the Court, that the judgment releases the defendant Santiago Bellaflores, a natural person, from any liability or obligation in respect to the payment of the debt or any subsequent claim by the plaintiff connected with the same.

"6—It is agreed and stipulated that the public auction of the property attached in this case to secure the effectiveness of the judgment will take place within a term not less than 10 days from the date of the judgment, of which the defendant

corporation shall be duly notified, through its attorney, Mr. Ramos, by a copy of the order of sale and, if the plaintiff is awarded the property, it will be for the total sum of the judgment.

"The parties pray the Court to approve the present stipulation so it may become part of the judgment."

In accordance with the terms of the stipulation, the trial court rendered judgment and ordered the auction sale of the attached property. Subsequently, the defendants-appellants requested that the sale of the attached property be suspended and that the attachment be reduced to an amount sufficient to cover the debt of the defendants-appellants, alleging that the attachment was excessive. The court refused to release part of the attached property, and from this refusal the defendants-appellants have appealed.

▆▆▆ The law applicable to the case is § 1709 of the Civil Code of Puerto Rico which provides: "A compromise is a contract by which each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, *or terminate one that has already been instituted.*" Perhaps § 1715 should also be considered. It provides: "A compromise has, with regard to the parties, the same authority as *res adjudicata; but summary proceedings shall not be proper except when the fulfilment of a judicial compromise is in question.*"

The commentaries on this ancient institution of law are abundant, but for present purposes,—the case here is a whole or partitional compromise "in which the parties claims deal with the subject matter itself of the suit or controversy"— it is enough to refer to the commentary of Puig Peña, which reads thus:

"A contract of compromise is fully performed by the parties when they comply with the following obligations: . . . the compromise has an immediate purpose: to agree to settle the differences existing between the parties pursuant to each party's

title to a right, and a mediate purpose—incorporated by its very essence into the contract—, and it is *to put an end to a dispute* which has arisen or prevent a dispute *which is about to arise.* Now then: there is no doubt that the first purpose is a fundamental object which must be faithfully accomplished by the parties. Consequently, it will be necessary to surrender something, to acknowledge rights, to enforce resignations, etc.; that is, to comply as a whole with the agrcements of the parties in settlement of the substantial matter in dispute. In this sense it seems wise to apply here the rules we already know on sales, a legal institution which involves great similarity with this contract, above all in its aspect of complex compromise. If there only existed mutual concessions between the contracting parties, the compromise would merely be a bilateral contract of onerous type. But there is more: as we said, the purpose of putting an end to a dispute which has arisen or is about to arise is the mediate end of the agreement which by its nature is incorporated to it. *The parties, then, must consider the points previously discussed as definitively solved, and cannot, in principle, renew the claims. Otherwise, the compromise would lose its rationale or reason of being.*

". . . . . . .

". . . Foreseeing the event of nonfulfillment, the doctrine was discussed as to whether the effects characteristic of a compromise would be those inherent in a contract (since it is a contract) or, on the contrary, whether *the agreement should be treated within a special classification engrafting therein a proper judicial element involving the plea of 'res judicata' and the proceeding for the execution of judgment.*

"Despite the disquisitions of some authors, the truth is that even from the time of the Roman Law the compromise has had that special tinge which was adopted by the principal legislations and, among us, by the Civil Code. The Code, actually, makes the general statement that 'a compromise has, with regard to the parties, the same authority as *res adjudicata* . . .' (§ 1816), [our 1715]. However, it is convenient to distinguish:

"*a)* That we are dealing with a judicial compromise.—In this case, if one of the parties does not comply with the stipulation, it may request immediately that the agreement be performed (June 10, 1912), [Spain], for such compromise has for the parties the same force as a final judgment (July 8, 1930),

[Spain], and the summary proceeding may, therefore, be used (§ 1816, *in fine*) [our 1715].

"      .      .      .      .      .      .      .

"If one of the parties, notwithstanding the agreement reached in the compromise, *attempts to reproduce its claims previously settled, the other one may bar the claim adducing in its favor the defense of 'res judicata'* which, according to § 1816 [our 1715], contains the agreement. The judgment of the Supreme Court of April 4, 1904 [Spain] states that *the complaint does not lie if there existed a compromise on the same facts which are the object of the suit.* Consequently, the action is barred and compensation for the nonperformance of the stipulation lies." IV-II Federico Puig Peña—*"Tratado de Derecho Civil Español"* 524–526 (1951 ed. of the Revista de Derecho Privado). (Brackets ours).

There is no doubt that it was the intention of the parties that the public auction to secure the effectiveness of the judgment should cover the total amount of the property previously attached for such purpose. We reach such a conclusion by necessary inference from the agreements included in the stipulation—§ 1714, Civil Code—since it not only mentions "the property attached in this case to secure the effectiveness of the judgment" but also that "if the plaintiff is awarded the property, it will be for the total sum of the judgment." Under these conditions the defendant was estopped, under the doctrine of res judicata—§ 1715—from going against that which was the specific subject matter of the compromise. There is nothing in such aspect of the compromise contrary to public policy, which calls for a treatment different from that given to a mere private contract. It has not been shown that in the compromise made by the parties and approved by the court, that there existed any error, deceit, violence, or forgery of documents, which are the cases in which a compromise is void, according to § 1716 connected with § 1217 of our Civil Code.

The judgment appealed from will be affirmed.